UNITED STATES, Appellant,

v.

Renee A. DEVITT, Airman First Class,
U.S. Air Force, Appellee,

and

Thomas A. Devitt, Airman First Class,
U.S. Air Force, Appellee.

Nos. 48949, 48950.
ACM 23876, ACM 23875.

U.S. Court of Military Appeals.

July 22, 1985.

For Appellee R. Devitt: *Major Conrad C. Baldwin, Jr.* (argued).

For Appellant: *Lieutenant Colonel Donal F. Hartman, Jr.* (argued); *Colonel Kenneth R. Rengert* and *Captain Brenda J. Hollis* (on brief); *Captain Kevin L. Daugherty.*

For Appellee T. Devitt: *Lieutenant Colonel Patrick C. Sweeney* (argued); *Colonel Leo L. Sergi* and *Major Richard A. Morgan* (on brief).

For Appellant: *Lieutenant Colonel Donal F. Hartman, Jr.* (argued); *Colonel Kenneth R. Rengert* and *Captain Brenda J. Hollis* (on brief); *Colonel Andrew J. Adams.*

*Opinion of the Court*

EVERETT, Chief Judge:

A

Thomas A. Devitt and Renee A. Devitt are husband and wife who in 1982 were serving at Langley Air Force Base, Virginia. Both were charged with conspiring to wrongfully distribute marihuana, in violation of Article 81, Uniform Code of Military Justice, 10 U.S.C. § 881; and with four specifications of wrongfully distributing marihuana, and one specification each of wrongful possession and wrongful use, all in violation of Article 134, 10 U.S.C. § 934. Three of the distributions were alleged as overt acts in the conspiracy specification, as was possession of marihuana on two dates within the period alleged in the possession specification. In all relevant aspects the allegations against each accused were identical; and the Government's theory of liability was that the two accused had conspired with each other and that both were criminally liable for any crime committed by either of them in furtherance of that conspiracy.

The two cases were joined for purposes of the Article 32 investigation, *see* UCMJ, 10 U.S.C. § 832; and at that investigation the couple were jointly represented by a retained civilian lawyer and a detailed military defense counsel. Subsequently, the convening authority referred the two cases to a joint trial which convened on January 25, 1983, with the same two lawyers representing both accused.

Before arraignment, defense counsel moved to sever the two cases.[1] The military judge granted the motion and proceeded first with trial of the wife, Renee Devitt. She entered mixed pleas; and after the judge had considered the evidence, she was found guilty only of the offenses to which she had pleaded guilty—namely, one specification each of wrongfully distributing, possessing, and using marihuana. After findings were announced, the military judge immediately proceeded to hear evidence on sentence (both sides waived argument); but he withheld announcement of sentence until after he tried and sentenced her husband, Thomas Devitt, who also elected trial by judge alone. Before Devitt entered his pleas, the convening authority dismissed the conspiracy charge against him. Thereafter, substantially in accord with his pleas, this accused was acquitted of one specification of distributing marihuana, but he was convicted of three distributions and of possessing and using marihuana over periods of several weeks.[2]

Thomas Devitt was sentenced to a bad-conduct discharge, confinement for 6

---

1. As defense counsel candidly admitted, they anticipated that the Government's evidence on the conspiracy charge would be substantially the same as to each accused. The defense planned to request trial by judge alone at the first trial; and then, if the judge acquitted on the conspiracy charge, a judge-alone trial would be requested in the second case. Conversely, if the judge convicted on the conspiracy charges in the first trial, trial by members would be requested in the other case.

2. The pleas and the findings diverged as to the initial date on which he began to possess and use marihuana and as to whether one of the distributions was in exchange for money.

months, forfeiture of $250.00 pay per month for 6 months, and reduction to the grade of airman basic. Thereafter, his wife was sentenced to confinement for 3 months, forfeiture of $250.00 pay per month for 3 months, and reduction to the grade of airman basic.

Apart from a slight modification of the findings, the convening authority approved the findings and sentence in the husband's case; and he approved without any modification the findings and sentence in the wife's case. When the record of trial of Renee Devitt was examined in the Office of the Judge Advocate General of the Air Force under the provisions of Article 69 of the Uniform Code, 10 U.S.C. § 869, the examiner recommended that the case be referred to the United States Air Force Court of Military Review to consider whether Renee Devitt had been denied her right to conflict-free counsel because the same two lawyers had represented both her and her husband but the military judge had failed to conduct the inquiry mandated by *United States v. Breese*, 11 M.J. 17 (C.M.A.1981). This recommendation was accepted by the Judge Advocate General.

Subsequently, in an opinion by Senior Judge Kastl, a panel of the Court of Military Review reversed Thomas Devitt's conviction because of the military judge's failure to comply with *Breese*. *See United States v. Devitt*, 17 M.J. 905 (A.F.C.M.R. 1984). According to the court,

> [w]e find the *Breese* rule to establish a *per se*, prophylactic requirement, premised on the Sixth Amendment, that the military judge make ... an inquiry [into any possible conflict of interest between the two accused] when the facts so warrant. Such questioning was mandated by the facts here, and the judge's failure to inquire required reversal.

*Id.* at 906. Six days later, another panel of the Court of Military Review reversed Renee Devitt's conviction in an unpublished *per curiam* opinion.

Thereafter, in each case the Judge Advocate General of the Air Force certified to this Court these two issues:

## I

WAS THE AIR FORCE COURT OF MILITARY REVIEW CORRECT IN HOLDING THE RULE SET FORTH IN *U.S. v. BREESE*, 11 M.J. 17 (C.M.A. 1981), IS A PROPHYLACTIC, *PER SE* RULE AND IN GIVING NO EFFECT TO THE LANGUAGE IN *U.S. v. BREESE* WHICH MAKES THE PRESUMPTION OF CONFLICT OF INTEREST SUBJECT TO REBUTTAL?

## II

IF THE FIRST QUESTION IS ANSWERED IN THE AFFIRMATIVE, WHAT WAS THE INTENT OF THE COURT OF MILITARY APPEALS IN HOLDING THE PRESUMPTION OF CONFLICT OF INTEREST TO BE SUBJECT TO REBUTTAL?

## B

In *United States v. Breese, supra* at 22–23, we stated:

> Rather than be plagued by the problem of alleged conflict of interest midway in a trial or during an appeal, it is far wiser to follow the path of Fed.R.Crim.P. 44(c) and inquire at the beginning of the trial—typically during an Article 39(a) [,UCMJ, 10 U.S.C. § 839(a)] session— into any conflict of interest perils. Accordingly, from the date of this decision, we shall presume—*albeit subject to rebuttal*—that the activity of defense counsel exhibits a conflict of interest in any case of multiple representation wherein the military judge has not conducted a suitable inquiry into a possible conflict. Thus, by following the lead of the Supreme Court and various Courts of Appeals in utilizing our supervisory jurisdiction in this manner, we intend to disarm future contentions that, by reason of multiple representation, an accused has been deprived of the effective assistance of counsel.

(Emphasis added; footnote omitted.)

From the time of the Article 39(a) session on the motion to sever, the military judge

was aware that the same two lawyers were representing both accused. Unfortunately, he overlooked the *Breese* requirement. Perhaps, he assumed subconsciously that the possibility of any conflict was too remote to merit inquiry; and in this connection we note that the United States Court of Appeals for the Fifth Circuit remarked in *United States v. Johnson,* 569 F.2d 269, 271, *cert. denied,* 437 U.S. 906, 98 S.Ct. 3096, 57 L.Ed.2d 1137 (1978), that

> ▮rdinarily, when a husband and wife are tried together the defenses would be consistent rather than conflicting. Where the defenses are not conflicting, a unified position, with a single attorney, may give more weight to the defense theory, rather than less.

(Footnote omitted.) However, the military judge, whatever his reason, failed to take the required precaution; and now we must determine the effect of this failure.

▮ In its opinion in *United States v. Devitt, supra,* the Court of Military Review expressed some uncertainty as to what this Court intended in *Breese* by our holding prospectively that, absent inquiry by the trial judge, there would be a rebuttable presumption that an active conflict of interest existed between two co-accused represented by the same lawyer. We established a rebuttable—rather than a conclusive—presumption so that the Government would be allowed to demonstrate either that no actual conflict of interest existed under the circumstances of the case, or else that, although a conflict existed, the parties nonetheless knowingly and voluntarily chose to be represented by the same lawyer.

In *Wood v. Georgia,* 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220, 230 (1981), the Supreme Court reiterated that "[w]here a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest." When this right has been violated by an actual conflict of interest which has not been waived, the Court has conclusively presumed prejudice and reversed the con-

viction. *Holloway v. Arkansas,* 435 U.S. 475, 481, 98 S.Ct. 1173, 1177, 55 L.Ed.2d 426, (1978); *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). This violation of constitutional rights has not been subjected to the harmless-error test which we applied to a different violation in *United States v. Remai,* 19 M.J. 229 (C.M.A.1985).

The Supreme Court observed in *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980), that "a possible conflict inheres in almost every instance of multiple representation." However, it declined to hold that an *actual* conflict always exists; and in *Cuyler,* further proceedings were directed to determine whether an actual conflict had occurred. Following *Cuyler,* in *United States v. Breese, supra,* we declined to presume any conflict of interest or prejudice to the accused. Instead, we examined the record and affirmed the conviction because we determined that there was no "actual conflict of interest between the co-accused which impaired the appellant's defense." 11 M.J. at 21 (footnote omitted). *Cf. United States v. Risi,* 603 F.2d 1193, 1195 (5th Cir.1979).

The determination that no "actual conflict of interest" existed was similar to deciding that the accused were not prejudiced; but sometimes the two issues are confused. This may have occurred in several cases which speak of a burden on the Government to prove that the accused has not been "prejudiced" when the trial judge failed to make inquiry about a possible conflict of interest. *See, e.g., United States v. Martorano,* 620 F.2d 912 (1st Cir.), *cert. denied,* 449 U.S. 952, 101 S.Ct. 356, 66 L.Ed.2d 216 (1980); *Colon v. Fogg,* 603 F.2d 403 (2d Cir.1979); *United States v. Johnson, supra; United States v. Foster,* 469 F.2d 1 (1st Cir.1972). However, as we interpret the Supreme Court precedents, no way exists for the Government to carry its burden of disproving prejudice if an "actual conflict of interest" existed. The real question to be answered, then, is whether the Government can carry its bur-

den of rebutting the presumption that there was an "actual conflict of interest."

■■■ According to *Foxworth v. Wainwright*, 516 F.2d 1072, 1076 (5th Cir.1975), quoted with approval in *United States v. Johnson, supra* at 272, a real "conflict of interest is present whenever one defendant stands to gain significantly by counsel adducing probative evidence or advancing plausible arguments that are damaging to the cause of a codefendant whom counsel is also representing." When an actual conflict develops at any stage of a trial, prejudice will be conclusively presumed as to all further proceedings.[3] However, the presumption established in *Breese* is not a conclusive presumption of prejudice, but instead is a rebuttable presumption that an "actual conflict of interest" exists.

■■■ Sometimes it will be discernible from the record—despite the rebuttable presumption to the contrary—that co-accused chose a common goal and that the multiple representation was a consciously selected means to reach that goal. This may be especially true where a husband and wife or other family members are involved; and apparently for this reason the Court commented in *United States v. Johnson, supra* at 271, that "[a] *per se* rule for the joint trial of a husband and wife is not logical."[4] Sometimes examination of the record will not suffice, and the only way to determine whether an actual conflict of interest existed will be by means of a limited *DuBay*[5] hearing ordered by the convening authority. This alternative was suggested in *Breese* by Judge Cook in his separate opinion, 11 M.J. at 26; *see also Wood v. Georgia, supra*; *United States v. Martorano, supra* at 915.

## C

While these two cases were pending at the Court of Military Review, appellate government counsel submitted interrogatories to the two attorneys who had represented these accused at trial concerning whether there were any conflicts of interest and whether they had knowingly waived their right to conflict-free attorneys. However, both lawyers declined to answer on grounds of attorney-client privilege.

■■■ Appellate government counsel contend that this privilege does not apply because it is personal to the client and in this instance has been waived by the client. They rely on *United States v. Dupas*, 14 M.J. 28, 30 (C.M.A.1982), where we observed:

> Frequently, a convicted defendant becomes disenchanted with the lawyer who represented him at trial and so he claims that he has been inadequately represented. When this occurs, the attorney-client privilege is waived, *United States v. Allen*, 8 U.S.C.M.A. 504, 508, 25 C.M.R. 8, 12 (1957), but only as to matters reasonably related to that claim.

(Footnotes omitted.) The accused reply that they have never attacked the performance of duties by their lawyers and that, instead, the error assigned concerns the failure of the military judge to properly perform his duties at trial.

This distinction is too tenuous. These accused basically contend that they did not receive effective assistance of counsel because of their lawyers' divided loyalties. However, the underlying thrust of their

---

**3.** It is conceivable that no conflict might exist with respect to findings but may exist as to sentence. In that event, the findings would not be tainted. Moreover, if the record of trial made clear that the attorney consistently sacrificed the interest of one party to the interest of the other, perhaps the conflict could not be availed of by the beneficiary of the lawyer's disloyalty.

**4.** Under *United States v. Breese*, 11 M.J. 17 (C.M.A.1981), we will apply the rebuttable presump-

tion of conflict of interest even in husband and wife cases; but we recognize that it will be easier for the Government to carry its burden of persuasion in such situations. Of course, sometimes the joint representation clearly is prejudicial to one of the spouses. *See, e.g., United States v. Pinc*, 452 F.2d 507 (5th Cir.1971).

**5.** *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967).

claim is a sixth-amendment violation—just as if the lawyers had been incompetent, unprepared, or inattentive. Moreover, multiple representation of clients with conflicting interests violates the ABA Model Code of Professional Responsibility,[6] unless after full disclosure the clients have chosen to be represented by the same lawyer. Therefore, the policy that gives rise to a waiver of the attorney-client privilege when a lawyer's competence is assailed would also apply here. Consequently, when a former client seeks to obtain reversal of his conviction and sentence because of improper multiple representation by his lawyer, the basis exists for holding that there has been a waiver of the attorney-client privilege.

Of course, appellate review of courts-martial convictions occurs automatically—unless appeal is waived or withdrawn under amendments[7] to the Uniform Code which took effect on August 1, 1984. Thus, the accused claim that a waiver of their attorney-client privilege should not exist here—even if it would apply in civil courts where appeals are specifically authorized and undertaken by defendants. We conclude, however, that if an accused is to benefit from a claim that his attorney, for whatever reason, failed to protect his interests fully, then the attorney's lips may not be sealed by the attorney-client privilege.

**D**

The United States Air Force Court of Military Review erred by failing to give effect to the language in *United States v. Breese, supra,* which states that the presumption of a conflict of interest is rebuttable. Therefore, we answer the first certified issue in the negative, so there is no need to answer the second question.

The decision of the United States Air Force Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Air Force for remand to that court for further review. The court may order a limited rehearing pursuant to *United States v. DuBay,* 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967), to determine whether, despite the rebuttable presumption to the contrary, the Government is able to establish either that no actual conflict of interest existed between the two appellees, or that they knowingly and voluntarily waived their right to representation by conflict-free attorneys. When the court completes its review, the record will be returned to this Court for final disposition.

Judge COX concurs.

Judge FLETCHER did not participate.

---

6. Maintaining the independence of professional judgment required of a lawyer precludes his acceptance or continuation of employment that will adversely affect his judgment on behalf of or dilute his loyalty to a client. *This problem arises whenever a lawyer is asked to represent two or more clients who may have differing interests,* whether such interests be conflicting, inconsistent, diverse, or otherwise discordant.
EC 5–14, ABA Model Code of Professional Responsibility (1980) (footnotes omitted).

7. *Military Justice Act,* Pub.L.No. 98–209, § 5(b)(1), 97 Stat. 1393, 1397–98 (1983).