UNITED STATES

v.

Vonda K. WHIDBEE, Seaman Recruit, U.S. Coast Guard.

UNITED STATES

v.

Philip K. BECK, Seaman, U.S. Coast Guard.

CGCM 0010, 0013.
Docket Nos. 909, 911.

U.S. Coast Guard Court of Military Review.

24 May 1989.

No. 909

Trial Counsel: LCDR Joseph Ahern, USCG.

Defense Counsel: LT Charles Bennardini, USCG.

Appellate Government Counsel: LCDR Arthur R. Butler, USCG (On DuBay Motion) LCDR Michael J. Devine, USCG (On Brief and Argued).

Appellate Defense Counsel: LCDR Robert Bruce, USCG (On DuBay Motion) LCDR James Collin, USCG (On Brief and Argued).

No. 911

Trial Counsel: LCDR Joseph Ahern, USCG.

Defense Counsel: LT Charles Bennardini, USCG.

Assistant Defense Counsel: LT G. Arthur Robbins, USCG.

Appellate Government Counsel: LCDR Arthur R. Butler, USCG (On DuBay Motion) LCDR Michael J. Devine, USCG (On Brief and Argued).

Appellate Defense Counsel: LCDR Robert Bruce, USCG (On DuBay Motion) LCDR James Collin, USCG (On Brief and Argued).

Before Panel One, BAUM,
BRIDGMAN and JOSEPHSON,
Appellate Military Judges.

BAUM, Chief Judge:

Appellants were tried separately on unrelated charges by two different general courts-martial, both convened by Commander, Seventh Coast Guard District. Each accused pled not guilty to all offenses[1] at trials before different officer members, presided over by two different military judges, one from the Navy and the other a Coast Guard officer. Despite the fact that the offenses and the courts-martial were unconnected, this Court, on its own initiative, has determined to consider the records together for decision because of a common dispositive issue relating to

the trial counsel and defense counsel in each case.

Both Seaman Recruit Whidbee and Seaman Beck were represented at trial by Lieutenant Charles Bennardini, USCG, the detailed defense counsel. The trial counsel who prosecuted each accused was Lieutenant Commander Joseph Ahern, USCG. Because of information that had come to the attention of appellate government counsel for the Beck case indicating that the trial counsel was the rating officer for detailed defense counsel, with responsibility for preparation of defense counsel's officer evaluation report, the Government requested a DuBay[2] evidentiary hearing to develop this matter, shortly after the Beck record was referred to this Court. Pursuant to the Government's request, the DuBay hearing was ordered. Thereafter, appellant Whidbee, whose record had been referred to the Court before Beck's, also requested a DuBay hearing on this matter since the same two counsel were involved in her case. After we granted that request, two separate hearings were held before the military judges who presided at trial. Both judges found that the trial counsel in each case was the immediate supervisor of the defense counsel for all duties not involving military justice and that trial counsel prepared an evaluation of defense counsel as to those duties. The assistant district legal officer, Commander Kenneth Gray, USCG, was defense counsel's immediate supervisor for military justice matters and, in that capacity, prepared evaluations in this area and reviewed the trial counsel's evaluations for the other work performed. Commander Gray also was the officer who detailed both counsel to these particular cases. The information

1. After pleading not guilty, Seaman Recruit Whidbee was convicted of specifications alleging cocaine use, disrespect, unauthorized absence, breaking restriction, soliciting to commit an offense and arson in violation of Uniform Code of Military Justice Articles 112a, 91, 86, 134 and 126, 10 U.S.C. §§ 912a, 891, 886, 934, 926. The Court sentenced her to a bad conduct discharge and confinement for three years and three months which was approved by the convening authority. After pleading not guilty, Seaman Beck was convicted of one specification of larceny of marijuana in violation of Article 121,

Uniform Code of Military Justice, 10 U.S.C. § 921 and one specification of possession of marijuana with intent to distribute it in violation of Article 112a, Uniform Code of Military Justice. The court sentenced appellant to a bad conduct discharge, confinement for 18 months, forfeiture of $550.00 per month for 18 months and reduction in rate to E-1, which was approved by the convening authority.

2. *United States v. DuBay,* 17 USCMA 147, 37 CMR 411 (1967).

concerning counsel was not brought to the attention of either judge at trial and, accordingly, was not inquired into during the course of either proceeding to determine whether the accused fully understood the defense counsel's relationship with trial counsel, any conflict of interest inherent in the relationship, and whether, despite any such conflict of interest, the accused desired the assigned attorney to continue as defense counsel rather than exercising an unconditional right to a conflict free attorney.

Appellate defense counsel argues in his first assignment of error in both cases that the requisite full disclosure of the conflict of interest relationship between trial counsel and defense counsel, which he says is called for by *United States v. Nicholson*, 15 M.J. 436 (CMA 1983), has not been met in either case. Without such full disclosure, he contends that prejudice is present, requiring relief. Government counsel argues to the contrary, asserting that the *DuBay* hearings reflect the necessary disclosure to each accused.[3] He further submits that even if there was not full disclosure, before relief should be granted, *United States v. Nicholson*, *supra*, requires a showing of prejudice from the relationship between prosecution and defense, which has not been met in these cases. Instead, according to government counsel, the *DuBay* hearings and the records of trial support findings of effective, unimpaired representation by defense counsel and, as a result, the judges correctly found, after the *DuBay* hearings, that there was no prejudice to either accused from the trial counsel/defense counsel relationship. After a

full explication of these and other contentions by counsel in written briefs and separate oral arguments, we are now prepared for decision.

■■■ Our reading of *United States v. Nicholson*, *supra*, and other conflict of interest opinions leads us to conclusions at odds with the government's position. In particular, we derive from *Nicholson*, *supra*, and *United States v. Devitt*, 20 M.J. 240 (CMA 1985) that when confronted with a case involving defense counsel conflict of interest we should scrutinize counsel's representation for prejudice *only* if we are first assured that the accused accepted his or her conflict encumbered counsel with full knowledge of that conflict of interest and associated rights. Without such a knowing acceptance of counsel, there is no waiver of the conflict of interest and, without waiver, there is a deprivation of a right so critical that prejudice to the accused will be conclusively presumed pursuant to the following guidance from *United States v. Devitt, id.* :

> In *Wood v. Georgia*, 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220, 230 (1981), the Supreme Court reiterated that "[w]here a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest." When this right has been violated by an actual conflict of interest which has not been waived, the Court has conclusively presumed prejudice and reversed the conviction. *Holloway v. Arkansas*, 435 U.S. 475, 481, 98 S.Ct.

---

**3.** In making this argument, government counsel acknowledges that the counsel relationship revealed here is the kind condemned in *United States v. Nicholson, supra.* In contrast, Lieutenant Commander Ahern, the trial counsel at the *DuBay* hearings contended at the Beck hearing that bifurcation of supervisory responsibilities over the defense counsel, with the Assistant District Legal Officer supervising and evaluating military justice functions and the trial counsel the remainder, removed the case from the ambit of *United States v. Nicholson, supra.* In rejecting that argument, the military judge made the following statement, with which we agree:

> If there is any chilling affect [sic] on the representation of the accused as a result of

the fact that the trial counsel is the supervisor of the defense counsel, that affect [sic] is not lessened because the trial counsel only rates the defense counsel in certain areas. While the defense counsel would not have to worry that his rating in the area of military justice would be affected by his performance, he would have to be aware that the ratings in other areas could be affected. Therefore, I find that LCDR Ahern was the immediate military supervisor of LT Bennardini, and that *United States v. Nicholson* is applicable. Military Judge's Findings of Fact and Conclusions of Law, Beck *DuBay* hearing at 2.

1173, 1177, 55 L.Ed.2d 426, (1978); *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). This violation of constitutional rights has not been subjected to the harmless-error test which we applied to a different violation in *United States v. Remai*, 19 M.J. 229 (CMA 1985).

*Id.* at 243.

In contrast to the cases involving a defense counsel's representation of co-accuseds, which may or may not manifest an actual conflict of interest,[4] the relationship here between defense counsel and trial counsel is such that it always presents an actual conflict of interest that is inherent and irrefutable. Accordingly, a waiver by the accused of that conflict is required in order for counsel to proceed. That is the point of *United States v. Nicholson, supra,* and its elaboration of this subject through incorporation of the American Bar Association's Standing Committee on Ethics and Professional Responsibility Informal Opinion No. 1474 (1982).[5] Therefore, our task must be to determine whether the accused in each case knowingly waived the actual conflict from the counsel relationship characterized in *Nicholson, supra,* as "wholly inimical to the appearance of integrity of the military justice system." If we find no waiver, we see *Devitt* as requiring reversal based on conclusively presumed prejudice.

The discussion following R.C.M. 901(d)(4)(D), Manual for Courts–Martial, 1984 specifically addresses the manner of dealing with such conflicts of interest in military trials:

Whenever it appears that any defense counsel may face a conflict of interest, the military judge should inquire into the matter, advise the accused of the right to effective assistance of counsel, and ascertain the accused's choice of counsel. When defense counsel is aware of a potential conflict of interest, counsel should discuss the matter with the accused. If the accused elects to waive such conflict, counsel should inform the military judge of the matter at an Article 39(a) session so that an appropriate record can be made.

This quoted procedure from the Manual for Courts–Martial was not followed, leaving us without an explanation and inquiry by the judge on the record from which we can readily determine whether there was a *knowing* waiver of the conflict of interest. Thus, we have a situation distinctly different from that facing the Court of Military Appeals in *United States v. Nicholson, supra,* where the trial judge was aware of the conflict and assured himself of the accused's informed decision concerning counsel and the conflict of interest. Instead, we must discern each accused's understanding from after-the-fact *DuBay* proceedings, which, at best, are a poor substitute for judicial inquiry at trial, particularly when there are contrary recollections, as they were at the *DuBay* hearing for Seaman Beck.[6] Failure to bring the counsel relationship to the attention of each judge during the trial so that the appropriate record could be made leaves the government with a very heavy burden to establish waiver by the accused. That the govern-

---

4. See, for example, *United States v. Breese,* 11 M.J. 17 (CMA 1981), where it was said: "it may even be advantageous for the co-accused to be represented by the same counsel." *Id* at 19.

5. Pertinent portions of the American Bar Association ethical opinion quoted in *United States v. Nicholson, supra,* are as follows:

The ethical requirements ... that a lawyer must provide zealous representation, and give unswerving loyalty to a client free from any influence that might weigh against that fidelity—clearly are violated where a military lawyer's opposing counsel in a court martial or related proceeding is an officer who has command over him.

. . . . .

No matter how fair the commanding officer may be, *there is an inherent conflict* between zealously representing a client and conducting oneself in a manner calculated to win the approval and favor of the officer exercising command authority. [Emphasis added]
15 M.J. at 438.

6. Defense counsel testified he advised both the accused and the accused's father of the relationship with trial counsel in early telephone calls. The accused and his father both denied being told about the relationship and said they did not become aware that the defense counsel worked for trial counsel until after the accused had been found guilty.

ment should be faced with such a burden here is not unfitting, however, since the trial counsel, who represents the Government, was fully aware of the conflict of interest relationship and did not inform the judge.

Upon completion of the Whidbee *DuBay* hearing, the judge found that Lieutenant Bennardini informed his client of the trial counsel/defense counsel superior/subordinate relationship. The judge further found, however, that, although the defense counsel revealed that relationship to Seaman Recruit Whidbee in a telephone call to her while she was an inpatient at Portsmouth Naval Hospital, there was no full disclosure in the sense of *Nicholson, supra*. The judge found that Seaman Recruit Whidbee was being medicated by anti-psychotic drugs and that she did not appreciate the full implications of what Lieutenant Bennardini advised her. The *DuBay* hearing evidence supports the judge's findings in this regard and we, therefore, concur with those conclusions concerning the accused Whidbee.

As to appellant Beck, the judge in that case found from the *DuBay* evidence that the defense counsel disclosed to Beck the nature of his administrative relationship with the trial counsel and that the accused accepted representation by Lieutenant Bennardini. The judge, however, did not address the question whether appellant Beck fully appreciated the implications of the relationship and his rights in this respect. Thus, whether there was the necessary understanding for the knowing waiver of conflict as contemplated by *Nicholson, supra*, was not addressed in the judge's findings with regard to Seaman Beck, as it was for Seaman Recruit Whidbee.

Even if the defense counsel disclosed his subordinate relationship with trial counsel,

as found by the judge in the face of controverted testimony, we are unable to find from the evidence that such explanation by counsel was sufficient for a knowing waiver to have been effected. This deficiency, which pertains equally in the case of Seaman Recruit Whidbee, results from counsel's failure to fully appreciate the conflict inherent in his relationship with the trial counsel and the requirements of *United States v. Nicholson, supra*, the American Bar Association's Code of Professional Responsibility and Standards Relating to the Defense Function, and R.C.M. 901(d)(4)(D).

It is clear from the testimony of Lieutenant Bennardini at the *DuBay* hearings that he did not recognize an actual conflict of interest inherent in his relationship with the trial counsel and that he was not fully aware of the resultant legal and ethical requirements.[7] He repeatedly denied there was a conflict of interest and saw no ethical problem, referring to his relationship with Lieutenant Commander Ahern as an appearance of impropriety. He testified that he consulted Commander Gray, who saw no problem and cited no ethical rules, regulations or cases to counsel. Lieutenant Bennardini said that his own research was limited to a perusal of Cannon 9, Code of Professional Responsibility.

If Lieutenant Bennardini saw no conflict and was unaware of the steps he was required to take in light of that conflict, it was impossible for him to provide the kind of explanation to an accused necessary for a knowing waiver. Most importantly, there is no showing that he fully understood the requirement that the government appoint another counsel free of conflict, should either of the accuseds have refused to accept him as counsel. To put it another way, each accused had an unqualified right to reject the assignment of Lieutenant Bennardini to the case and have a substitute

---

7. Whidbee *DuBay* hearing at 59–60 and 66–68; Beck *DuBay* hearing at 41–42. The following excerpts highlight these conclusions:

> Q ... When did you first become aware that there was a conflict of interest?
> A I never viewed it as a conflict of interest.... Whidbee *DuBay* hearing at 66.
> Q. Did you go look at the Code of Professional Responsibility during that time frame?

> A. Nope. I didn't see any ethical problem.
> CDC: Uhm—
> WITNESS: What I saw was an appearance of impropriety, not a conflict of interest or any other ethical problem.
> Beck *DuBay* hearing at 41.

counsel appointed. Such appointment was not dependent on an accused's submission of a request and a determination of availability, as is the case when an individual military counsel (IMC) is desired. From Lieutenant Bennardini's testimony, it appears that he advised both clients of their right to request an individual military counsel, who would be appointed, if available. That explanation falls short of what was required under the circumstances.

■ Without an explanation by the military judge to each accused on the record, we must depend on the evidence developed at the *DuBay* hearings. That evidence fails to convince us that each accused received the requisite full explanation of defense counsel's relationship with trial counsel, the conflict inherent in that relationship, and the resulting rights guaranteed to each accused. Accordingly, we are unable to find a knowing acceptance by each accused of Lieutenant Bennardini as counsel. Consequently, the necessary waiver of the actual conflict of interest inherent in defense counsel's relationship with trial counsel has not been established. Absent such waiver, we will follow the guidance of *United States v. Devitt, supra,* and conclusively presume prejudice to each accused. Under the circumstances, we are not called upon to evaluate counsel's representation for possible prejudice. As a result, the conclusions in that regard expressed by the trial judges after the *DuBay* hearings have no bearing on the basis for our decisions in these cases.

Having decided the issues necessary for resolution of these cases, the Court feels impelled to comment on other important concerns raised by the facts presented here. In both of these courts-martial a recent law school graduate with limited experience as a court-martial counsel was appointed to represent two accuseds charged with offenses considered serious enough to warrant trial by general court-martial, a relatively infrequent forum in the Coast Guard. As if that challenge were not enough, counsel was shouldered with the additional burden of opposing his "boss" in these adversary proceedings, who, we judicially note, had military justice counsel experience at both the trial and appellate levels. Despite the problems presented by such counsel appointments, the detailing officer, whose *DuBay* testimony presents a supervisor with extensive background and experience in military justice, failed to give defense counsel any supervision and advice with respect to the proper manner of dealing with the conflicted relationship. Testimony from the military justice supervisor, in fact, revealed a conscious decision not to discuss the matter with defense counsel.[8]

In our view, it is asking too much of an inexpereinced counsel to place him in such a position without the necessary guidance. The decision to proceed in this manner was not only deleterious to each of the accuseds affected, it was unfair to the young attorney appointed as defense counsel and a disservice to the military justice system in general. To his credit, the defense counsel tried to do his best under the circumstances. He even sought advice from the trial counsel, which, according to defense counsel, left both concluding "that's the way the Coast Guard was and had been doing business in trial and defense work and we felt we were professional enough to handle it."[9] Unfortunately, that was not enough! Neither counsel took the appropriate action called for by case law, regulation, and ethical precepts. Furthermore, their conclusion that the appointment of superior and subordinate as adversary courts-martial counsel is the way the Coast Guard oper-

8. The following excerpt pertains:
 Q All right, Commander. So clearly you recognized that there was a potential conflict. I think that's clear from your testimony.
 Did you at any time call in Lieutenant Bennardini and explain to him—because he was a relatively-inexperienced counsel despite his aggressiveness and his qualifications; is that not correct?
 A That's true.
 Q Just to mention to him that there might be this conflict and he might want to resolve that as far as his client is concerned?
 A No. I never—I never brought it up to him. I specifically didn't want to.
 Whidbee *DuBay* hearing at 36–37.

9. Whidbee *DuBay* hearing record at 70.

ates does not comport with the observations of this Court.

 If we are incorrect as to past practice in this regard, then we wish to make it eminently clear that for the future the Coast Guard should not be "doing business" in such a manner. As to this subject, it was brought out in oral argument that the Coast Guard's Military Justice Manual has, in fact, been changed to preclude such counsel appointments from reoccurring. In the unlikely event that such should occur again, however, we want to make it clear that all such conflict burdened trial counsel/defense counsel relationships, or any other situation in which defense counsel has a conflict of interest,[10] must be appropriately addressed during the trial. Prior to trial, of course, the defense counsel is required to explain such matters to the accused.

This principle is covered in detail in the American Bar Association Standards For Criminal Justice, Defense Function, which, along with the American Bar Association's former Code of Professional Responsibility is applicable to courts-martial in the U.S. Coast Guard and was so at the time of the instant trials through Sections 600–1 and 600–2 of the Coast Guard's Military Justice Manual.[11] In particular, the commentary following Defense Counsel Standard 4–3.5,

the Conflict of Interest Standard, sets out the following:

### Disclosure of Conflict of Interest

The obligation of an attorney to disclose to a potential client any relationship to other parties or the subject matter of the case that might undermine or draw into question the attorney's ability to guard the client's confidences and zealously pursue the client's interest governs members of the bar in all aspects of their professional activity.[1] In a criminal case this responsibility rests heavily on the lawyer because the circumstances of the lawyer's initial contact with the client are likely to render the client less sensitive to such considerations or less capable of understanding them. In most instances, the client's confrontation with the criminal law will loom so large that the client will be eager to obtain any representation as soon as possible and thus will not be particularly cautious in evaluating a potential conflict even when it has been disclosed.

_____

1. See ABA, Code of Professional Responsibility DR5–101(A); H. Drinker, Legal Ethics 103–131 (1953).

If following full disclosure, the accused indicates an intention to waive the conflict, the circumstances must be brought to the

10. The following cases provide other examples of various kinds of conflicts that can arise: *United States v. Newak*, 24 M.J. 238 (CMA 1987), *United States v. Devitt, supra, United States v. Breese, supra*, (defense counsel representing co-actors at trial and pretrial stages); *United States v. Davis*, 3 M.J. 430 (CMA 1977), *United States v. Cahill*, 3 M.J. 1030 (NCMR 1977) (defense counsel's representation of accused and prosecution witness); *United States v. Baca*, 27 M.J. 110 (CMA 1988), *United States v. Babbitt*, 26 M.J. 157 (CMA 1988) (defense counsel's personal and emotional relationship with clients); *United States v. Stephens*, 25 M.J. 171 (CMA 1987) (defense counsel's business relationship with clients).

11. That Manual was promulgated on 10 April 1985 and was reissued in a slightly different format on 16 October 1987. Chapter 6, Sections A 1 and 2 of the 1987 Manual are the same as Sections 600–1 and 600–2 of the 1985 Manual. The pertinent portions in effect at the time of trial were as follows:

*Standards of conduct.* As far as practicable, and when not inconsistent with the law, the

Manual for Courts–Martial and regulations, the American Bar Association Code of Professional Responsibility and the Code of Judicial Conduct apply to courts-martial in the Coast Guard.

. . . .

*American Bar Association Standards for the Administration of Criminal Justice.* As far as practicable, and when not inconsistent with the law, the Manual for Courts–Martial and regulations, the following American Bar Association Standards for the Administration of Criminal Justice are applicable to courts-martial of the Coast Guard:

(a) The Prosecution Function and the Defense Function.

Coast Guard Military Justice Manual (COMDTINST M5810.1A) 10 APR 1985 at page VI–1 *United States v. Newak, supra,* at footnote 4 indicates that, arguably, failure to adhere to these promulgated standards violates a service regulation "and, in the process, denies an accused military due process of law."

attention of the military judge who shall conduct an appropriate inquiry on the record and ensure that the accused's rights are fully understood and protected.

In light of our foregoing findings of unwaived defense counsel conflict of interest, with resultant conclusively presumed prejudicial error, in both cases, the findings of guilty and sentences with respect to both Seaman Recruit Vonda K. Whidbee and Seaman Philip K. Beck are set aside. Rehearings may be ordered.

Judges BRIDGMAN and JOSEPHSON, concur.