UNITED STATES, Appellee,

v.

Timothy W. REID, Major, U.S. Air Force, Appellant.

No. 63750/AF.
ACM 27537.

U.S. Court of Military Appeals.

Submitted May 16, 1990.
Decided March 20, 1991.

For Appellant: *Colonel Richard F. O'Hair* and *Captain Mark R. Land* (on brief).

For Appellee: *Colonel Robert E. Giovagnoni* and *Captain Morris D. Davis* (on brief); *Major Paul H. Blackwell, Jr.*

*Opinion of the Court*

EVERETT, Senior Judge:

A general court martial convicted Major Reid of one specification of larceny, seven specifications of passing bad checks or credit-union drafts, and one specification of assault and battery, violations of Articles 121, 123a, and 128, Uniform Code of Military Justice, 10 USC §§ 921, 923a, and 928, respectively.[1] The members sentenced him to dismissal, confinement for 5 years, and forfeiture of $1500.00 pay per month for 60

---

1. Reid pleaded guilty to the larceny and bad-check offenses. He was also charged with two assault offenses on his wife Priscilla. He pleaded not guilty to both, but he was convicted of one.

months. The convening authority approved these results.

In an unpublished opinion, the Court of Military Review affirmed the findings. However, it concluded that the sentence was too harsh and so reduced the periods of confinement and forfeitures to 42 months each.

We granted Major Reid's petition for review to consider the following issues:

## I

WHETHER THE MILITARY JUDGE ERRED IN FAILING TO GIVE AN INSTRUCTION ON SELF–DEFENSE FOR SPECIFICATION 1 OF THE ADDITIONAL CHARGE.

## II

WHETHER THE AIR FORCE COURT OF MILITARY REVIEW ERRED IN HOLDING THAT THE OPINION OF [A] FORMER SUPERVISOR THAT APPELLANT SHOULD NOT BE RETAINED IN THE AIR FORCE, WHICH OPINION WAS OFFERED FOR CONSIDERATION ON SENTENCING, WAS HARMLESS ERROR.

## Issue I

■ Major Reid and his wife Priscilla for some years apparently had been married in name only. The differences between them escalated to a point where they separated and ultimately were divorced.

About 1 month after the divorce was final, Priscilla sent their daughter to a camp in an effort to alleviate some of the strain on the girl. Appellant volunteered to fly in and to go with her to pick the girl up so they all could "have a family day." Because of the distance to the camp, Priscilla suggested that Reid fly in the night before so they could get an early start the next morning. Reid agreed.

When Reid arrived at the airport, Priscilla met him. They had dinner and, after a long evening of conversation, went to her home. Much of the conversation had concerned appellant's troubles. Priscilla told Reid that he had no one to take care of him and that he should talk to his mother.

This enraged Reid, who began to leave the house, taking the keys to Priscilla's car with him. She followed him and told him that he could not take the car because she needed it for her job. In an effort to prevent Reid from leaving with the vehicle, she grabbed his wrist.

At that point Reid told her that he couldn't "take any more." He picked her up and threw her over his body and down his back, so she landed on the concrete driveway. As Priscilla attempted to get up, Reid again grabbed her and threw her to the ground. Priscilla described the action as being thrown to the ground "full blast." As a result, she sustained numerous abrasions, a bloody elbow and arm, and "a large welt" on her leg.

Priscilla's testimony was the only evidence as to this offense. However, appellant contends on appeal, though he did not do so at trial, that evidence surrounding the other specification of assault (of which he was acquitted) should be considered as bearing on his actions and as warranting a *sua sponte* instruction on self-defense.[2] To put this claim in perspective, we briefly recite the evidence concerning that earlier assault.

The incident occurred in November 1987, about 8 months prior to the offense before us. Reid was alleged to have struck Priscilla with his open hand. At the time, he was living with Ms. Andrea Treudeaux, who by the time of trial had become his second wife. Andrea testified that Major Reid brought Priscilla to the house where they were residing. Each was somewhat taken aback by Reid's relationship with the other.[3] In short order, the meeting erupt-

---

2. The military judge instructed the members that self-defense was an issue to be considered as to the specification alleging an assault in November 1987, of which Reid was acquitted.

3. It appears that Andrea believed that Major Reid was either legally separated or divorced from Priscilla and that his visits to the Dallas

ed into a confrontation between Priscilla and appellant concerning Andrea. At some point, Reid did strike Priscilla. However, during the altercation, she struck him repeatedly in the face, pushed him into the swimming pool, and bit his nose.

After being pushed into the pool herself, Priscilla calmed down and changed clothes. She then became distraught, went to her automobile, and produced a pistol. According to Andrea's testimony, Priscilla told Reid that she was "going to blow" his "head off."

Before us appellant argues that this evidence was sufficient to raise the question of self-defense as to the assault of July 8. It is his contention that Priscilla's explosion of fury on learning of his paramour in November could have caused him to believe he was in danger of great bodily harm when she pursued him in an attempt to prevent his taking her car in July. *See* RCM 916(e)(3), Manual for Courts–Martial, United States, 1984. In his view, this was evidence to which the members could have attached credibility had they so desired, thus warranting a *sua sponte* instruction by the military judge. *Cf. United States v. Taylor*, 26 MJ 127 (CMA 1988).

However, the record is devoid of any indication that Priscilla was about to engage in any acts similar to those in November. The uncontroverted evidence is that the only time she touched Major Reid on the second occasion was in an attempt to prevent him from fleeing with her automobile. At that point appellant threw her to the concrete, not once but twice. Even if Reid initially had perceived some threat, however minimal, the second "body slam" exceeded the limits of reasonable action permitted for protection against bodily injury. The members could have found him guilty of the specification based on the second act alone.

Accordingly, we conclude that the military judge did not err in omitting to in-

struct as to self-defense in connection with this specification. Indeed, we believe that Reid's comment immediately before the assault that he couldn't "take any more" is telling as to the motivation for his attack.

## Issue II

■ As to the second granted issue, the Government called Lieutenant Colonel Hancock, who had supervised Major Reid in a prior duty assignment. Trial counsel asked him to state his opinion as to appellant's potential for rehabilitation. Over defense objection, Lieutenant Colonel Hancock testified that appellant should not be retained in the Air Force.

Citing our opinion in *United States v. Ohrt*, 28 MJ 301 (1989), the Court of Military Review correctly held that this testimony was not relevant. After analyzing the case to determine whether the sentence was more severe than would have been adjudged had the error not been committed, it concluded that appellant had not suffered substantial prejudice. *See United States v. Sales*, 22 MJ 305 (CMA 1986); *United States v. Suzuki*, 20 MJ 248 (CMA 1985). It is this latter holding that appellant disputes before us.

Our evaluation of the record leads us to agree with the Court of Military Review. As noted above, appellant was convicted of larceny; he actually was caught shoplifting clothing of a value of over $100.00 from a department store in the civilian community. In addition, he stands convicted of making and uttering sixteen checks or drafts (ten to various nonappropriated-fund activities at three Air Force bases, three to a credit union, and three in the civilian community) with intent to defraud the payees. The total value of these drafts was in excess of $5500.00.

The Court of Military Review applied the proper standard to determine whether appellant had been prejudiced. *See United*

---

area where Priscilla resided were strictly parental visits to their daughter. Priscilla's disclosure that they engaged in conjugal relations during these visits was a revelation that Andrea was not

prepared for. On the other hand, Priscilla apparently was totally unaware that appellant was living with Andrea.

*States v. Sales* and *United States v. Suzuki,* both *supra.* In light of the evidence and the circumstances surrounding the offenses, we do not disagree that the members would have sentenced appellant to a dismissal even if the error had not occurred.[4]

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judge COX concur.

**4.** The action of the Court of Military Review, reducing the term of Reid's confinement and the duration of the forfeitures, was predicated on that court's independent duty to review the sentence for correctness in fact. *See* Art. 66(c), Uniform Code of Military Justice, 10 USC § 866(c); *United States v. Sales,* 22 MJ 305, 308 (CMA 1986); *United States v. Suzuki,* 20 MJ 248, 249 (CMA 1985).