# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

———————————

**No. 201600084**

———————————

## UNITED STATES OF AMERICA
Appellee

v.

## BRIAN C. CHRISTOPHER
Cryptologic Technician (Networks) Second Class (E-5), U.S. Navy
Appellant

———————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Commander Marcus N. Fulton, JAGC, USN.
Convening Authority: Commandant, Naval District Washington,
Washington Navy Yard, D.C.
Staff Judge Advocate's Recommendation: Commander James A.
Link, JAGC, USN.
For Appellant: Philip D. Cave, Esq.; Lieutenant Doug R. Ottenwess,
JAGC, USN.
For Appellee: Lieutenant Commander Justin C. Henderson, JAGC,
USN; Lieutenant Robert J. Miller, JAGC, USN.

———————————

Decided 12 September 2017

———————————

Before GLASER-ALLEN, MARKS, and JONES, *Appellate Military Judges*

———————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

———————————

JONES, Judge:

At a contested general court-martial, officer members convicted the appellant of one specification each of sexual assault, indecent visual recording, and assault consummated by a battery, violations of Articles 120,

120c, and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 920c, and 928 (2012). The convening authority approved the adjudged sentence of confinement for one year, forfeiture of all pay and allowances, reduction to pay grade E-1, and a bad-conduct discharge.[1]

The appellant raises nine original assignments of error (AOEs): (1) he was deprived of his counsel of choice; (2) the military judge erred in instructing the members on the standard of proof required for conviction; (3) his conviction for indecent visual recording is factually insufficient; (4) his conviction for sexual assault is factually insufficient; (5) his conviction for assault consummated by a battery is factually insufficient; (6) the military judge erred in not instructing the members on self-defense regarding the assault consummated by a battery offense; (7) the military judge should have recused himself after exhibiting frustration with the civilian trial defense counsel in front of the members; (8) ineffective assistance of counsel prevented a fair trial; and (9) the military judge abused his discretion by preventing use of MILITARY RULE OF EVIDENCE (MIL. R. EVID.) 412, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.) evidence to impeach the sexual assault victim.[2] The appellant also raises a supplemental AOE: the military judge erred in instructing the members that mistake of fact as to consent was not available to the appellant unless he reasonably believed that at the time of the conduct at issue the victim consented.[3]

In a declaration, separate from his brief, the appellant further argues: (A) his Article 32, UCMJ, hearing was defective, leading to improper referral of charges to trial, where the military judge erred in granting no relief; (B) the military judge erred in failing to order a deposition of the complaining witness; (C) the trial counsel violated discovery rules and Article 46, UCMJ; (D) the record of trial is incomplete and inaccurate; (E) the military judge's frustration with the civilian defense counsel prevented a fair trial; and (F) his lawyers failed to represent him properly, which caused the military judge to exhibit prejudicial frustration.[4]

Having carefully considered the record of trial and the parties' submissions, we conclude the findings and sentence are correct in law and

---

[1] The appellant was found not guilty of three charges involving ND—one specification of sexually assaulting her by forcible penile penetration, and two specifications of assault consummated by a battery.

[2] AOEs 7-9 are raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (1982).

[3] Raised pursuant to *Grostefon*, 12 M.J. at 431.

[4] Appellant's Motion to Attach of 28 Sep 2016, Appellant's Declaration of 27 Sep 2016 (Appellant's Declaration).

fact and find no error materially prejudicial to the appellant's substantial rights. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

The appellant and his girlfriend, ND, practiced "Bondage, Dominance, [and] Sadomasochism" (BDSM) that involved "scenes" of sexual spanking, role-playing, and sadism.[5] A written contract guided their BDSM practice, and one of ND's rules from early in the relationship was "[n]o penetration of [her] butt"—although she later consented twice to anal sex with the appellant and also tried "anal training" with sex implements.[6] A third anal penetration occurred outside of a BDSM scene context, without ND's consent, after ND returned home from a party. The appellant was upset at her and repeatedly digitally penetrated her anus, despite ND's pleas to stop. On another occasion outside of a BDSM scene, in response to ND biting his back during an argument, the appellant bit her, causing a large lump and bruise visible in a photograph taken a week later.[7]

The appellant met another sexual partner, KW, online. For their first actual meeting, they arranged to have sex at a motel. Without her knowledge, the appellant filmed KW while she was in the motel parking lot, as she walked upstairs to their room, and while they were having sex. When KW discovered the hidden camera and confronted the appellant, he complied with her demands to delete the video of their sexual intercourse. KW then told the appellant to leave her alone and left the motel room.

At his Article 32, UCMJ, preliminary hearing, the appellant was represented by a civilian defense counsel and his detailed defense counsel, Lieutenant (LT) JC. After charges were referred to trial, but before his arraignment, the appellant filed a pretrial motion to disqualify various counsel, citing LT JC's marriage with the acting senior trial counsel, LT MVC, who had been screened from the appellant's case. When the appellant refused to waive the apparent conflict of interest of LT JC's representation, the military judge granted LT JC's request to withdraw. The defense then indicated they were going to put in an individual military counsel (IMC) request for LT JT to join the defense team but the civilian defense counsel subsequently withdrew the request for LT JT before it could be approved. LT MCC was detailed to represent the appellant, and he did so, through the entire trial, including the submission of post-trial matters.

---

[5] Record at 755-59, 763, 775, 777, 859.

[6] *Id.* at 760, 810-11, 818, 1186.

[7] *Id.* at 773, 949-50, 955, 1190.

The defense team litigated more than a dozen additional pretrial motions, including motions to dismiss, to gain access to witnesses and evidence, and, significantly, the appellant's renewed motion to disqualify the entire trial service office. The military judge invited further briefs on disqualifying the prosecutors and heard testimony from the former acting senior trial counsel, LT MVC. At no time did the appellant ever request LT JC's reassignment to his defense team. Noting the appellant was now "represented by conflict-free counsel," and that LT MVC "was properly screened off from participation in th[e] case" the military judge denied the motion to disqualify the Region Legal Service Office (RLSO) Trial Department from prosecuting the case.[8]

The military judge also denied the defense MIL. R. EVID. 412 motion to use videos and photographs of ND's consensual anal sexual activity with the appellant. However, the defense was permitted to cross-examine ND on, *inter alia*, her use of a safe word, her consensual anal sex with the appellant, and the consensual use of force during their BDSM activities.

## II. DISCUSSION

We have fully considered and summarily reject AOEs (2), (7), and A-F.[9]

## A. Deprivation of counsel of choice

LT MVC—the wife of the appellant's original detailed counsel, LT JC— was assigned as a prosecutor on his case from November 2014 until May 2015, leaving the case before the referral of any charges. In his motion requesting that LT MVC's entire office be disqualified from prosecuting his case, the appellant discussed the implications of the marriage between LT MVC and his detailed defense counsel's ability to represent him:

> The undeniable fact is Lieutenant [JC] could easily be placed in a position where his professional success could come at significant personal peril. It could easily be fathomed [sic] a situation where Lieutenant [JC] could be subliminally influenced to ensure the professional success of his spouse. Of course, [the appellant] can be briefed of these concerns and can waive the apparent conflict.[10]

At arraignment, on 10 July 2015, LT JC explained the situation to the military judge:

> There is an apparent conflict with my representation of [the appellant] because my wife, [LT MVC], works at Region Legal

---

[8] Appellate Exhibit (AE) CXXXVII at 3.

[9] *United States v. Clifton*, 35 M.J. 79 (C.M.A. 1992).

[10] AE V at 4.

Service Office temporarily as Acting Senior Trial Counsel. I believe that is a waivable conflict. However, my co-counsel has filed a motion to argue that it is an actual conflict. And because of that motion, I believe there is now an actual conflict where I cannot zealously and ethically argue that motion. And so, I ask the court's permission to be released.[11]

When the appellant refused to waive LT JC's conflict of interest, the military judge granted the request to release LT JC, explaining, "based upon [LT JC's] representation to the court over his concern of an apparent conflict, I have released him from this case."[12] The appellant indicated that he understood. The appellant then told the military judge that he was in the process of requesting representation by an IMC, LT JT. The military judge said he would address the IMC issue and any request to reassign LT JC to the case at the next court session. The appellant said he was "okay with" proceeding with his civilian defense counsel as his sole legal representative for the arraignment.[13]

On 13 July 2015—three days after the arraignment and LT JC's withdrawal as counsel—a lieutenant commander replaced LT MVC as the senior trial counsel. LT JC was not reassigned to the case after the change in his wife's capacity within the RLSO.

On 21 July 2015, the military judge—via email—attempted to run to ground the request for IMC, and also ensure a detailed defense counsel had been assigned to represent the appellant. On 22 July 2015, the civilian defense counsel emailed to all parties that "To be clear, the IMC motion is withdrawn."[14] At the next court session, the civilian defense counsel orally withdrew the appellant's request for LT JT as an IMC, and LT MCC entered his appearance as the new detailed trial defense counsel.[15]

---

[11] Record at 6.

[12] *Id.* at 12.

[13] *Id.* at 14.

[14] Appellant's Declaration at Attachment A3.

[15] The appellant argues on appeal that his IMC request for LT JT was never formally denied, and the record is unclear whether his civilian defense counsel withdrew the request with his knowing consent. Although the reasons for the withdrawal are not in the record, emails by the civilian defense counsel suggest that he was ascertaining whether the appellant could petition his representation as an IMC, while the civilian defense counsel was doing his active duty time as a reservist in the U.S. Army. The civilian defense counsel indicated that if he was mobilized, "the Accused has stated he will IMC me. It would be met with approval from my chain of command. However, if [Lt JT] is approved then he can't submit for me." *Id.*,

Each accused is entitled to representation by detailed military defense counsel. Art. 38, UCMJ. An existing relationship with detailed defense counsel may be severed "by the military judge upon application for withdrawal by the defense counsel for good cause shown," in accordance with RULE FOR COURTS-MARTIAL (R.C.M.) 506(c), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). Any "significant risk that the representation of one or more clients will be materially limited . . . by a personal interest of the covered attorney" results in a conflict of interest for Navy attorneys:

> A pre-existing personal, professional, or commercial relationship with any other party, witness, judge, or attorney— whether pre-existing the client's proceeding or contemplated during the course of a proceeding—involved in a proceeding creates a strong appearance of a potential conflict of interest that must be disclosed to the client to permit the client to make an informed decision regarding the potential conflict of interest.[16]

Upon discovering a conflict, a defense counsel must notify the military judge. *United States v. Lee*, 70 M.J. 535, 541 (N-M. Ct. Crim. App. 2011). If an accused declines to waive the conflict, the military judge may release the counsel or consider other remedies. *Id.*

The appellant's motion to disqualify the RLSO Trial Department properly notified the military judge of LT JC's potential conflict. LT JC initially identified the issue as an apparent conflict which could have been waived by the appellant. But then—citing the civilian defense counsel's motion—LT JC admitted he was unable to "zealously and ethically" advocate "that motion" for the appellant in light of his client's claim that he was "an improper participant" incapable of providing effective representation.[17] The appellant made an informed decision that he no longer wanted LT JC to represent him. The military judge confirmed that the appellant was unwilling to waive the conflict of interest before he properly granted the good cause withdrawal request of LT JC, pursuant to R.C.M. 506(c). We find no merit in a claim where the appellant asserts his detailed defense counsel was incapable of effectively representing him but then refused to acquiesce to his release by the military judge.

Assuming, *arguendo*, the military judge's severance of LT JC was in error, the appellant is still required to "establish that the error[s] produced

---

at Attachment C1. The appellant made no objection at trial when his civilian defense counsel orally withdrew the IMC request for LT JT.

[16] JAGINST 5803.1E, Rule 1.7 ¶¶ a and c(5) (20 Jan 2015).

[17] Record at 6; AE V at 4.

material prejudice to [his] substantial rights[.]" *United States v. Hutchins*, 69 M.J. 282, 292 (C.A.A.F. 2011) (citing Art. 59(a), UCMJ, 10 U.S.C. § 859(a) (2012) (additional citation omitted)). *See also United States v. Wiechmann*, 67 M.J. 456 (C.A.A.F. 2009); *United States v. Rodriguez*, 60 M.J. 239 (C.A.A.F. 2004). The appellant fails to meet this burden.[18]

The appellant was at all times—including during the Article 32, UCMJ, preliminary hearing—represented by the same civilian defense counsel. The appellant points to no "issues under the initial responsibility of [LT JC that] involved matters of fact or law in which he had unique knowledge or expertise beyond that which could be gained through routine preparation" by LT MCC, his replacement as detailed defense counsel. *Hutchins*, 69 M.J. at 292. Likewise, the appellant points to nothing unique about LT JT—the IMC requested and then withdrawn—showing that he had some specialized knowledge or expertise essential to the case. There was no government interference with the appellant's right to counsel; the defense's own disqualification motion and withdrawal of the IMC request orchestrated which attorneys remained on the defense team.

Despite the appellant's claims on appeal that he wanted LT JC to resume representing him after the initial motions session, and that he wanted LT JT to represent him as an IMC, we find no material prejudice to a substantial right of the appellant.

## B. Factual sufficiency of the convictions

The appellant challenges the factual sufficiency of his convictions. We review questions of factual sufficiency *de novo*. Art. 66, UCMJ; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for factual sufficiency is whether, "after weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses as did the trial court, this court is convinced of the appellant's guilt beyond a reasonable doubt." *United States v. Rankin*, 63 M.J. 552, 557 (N-M. Ct. Crim. App. 2006)

---

[18] We decline the appellant's invitation to find structural error. "Structural errors involve errors in the trial mechanism so serious that a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence. . . . There is a strong presumption that an error is not structural. The Supreme Court has recognized two tests for structural error: (1) when a court is faced with the difficulty of assessing the effect of the error . . . and (2) when harmlessness is irrelevant[.]" *United States v. Brooks*, 66 M.J. 221, 224 (C.A.A.F. 2008) (citations and internal quotation marks omitted). We have no difficulty assessing any error's lack of effect on the right to counsel of choice in this case, and we adhere to *Hutchins'* material prejudice test. *But cf. United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006) (holding denial of counsel of choice is not subject to harmless error analysis because of the difficulty in assessing the effect of the error in light of the many unquantifiable and indeterminate variables involved in representation).

(citing *Unted States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987) and Art. 66(c), UCMJ), *aff'd on other grounds*, 64 M.J. 348 (C.A.A.F. 2007). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. While this is a high standard, the phrase "beyond a reasonable doubt" does not imply that the evidence must be free from conflict. *Rankin*, 63 M.J. at 557 (citation omitted).

*1. Sexual assault of ND*

To convict the appellant of sexual assault, the government had to prove beyond a reasonable doubt that: (1) the appellant committed a sexual act upon ND, to wit: penetration of her anus with his finger; and (2) he did so by causing bodily harm to ND, to wit: throwing her down onto the bed and using his body to hold her down.[19]

The appellant's and ND's relationship included both pretend and real violence, as they engaged in their BDSM lifestyle. However, ND claimed that the appellant penetrated her anus with his finger on one occasion outside of a BDSM scene context. She testified that he bound her hands behind her back, forced her face-down onto a bed, and questioned her about what she had done at a party she had attended. Dissatisfied with her answers, he repeatedly digitally penetrated her anus. ND's pleaded with him to stop and even used her safe word, even though the appellant's actions were not part of a scene. On appeal, the appellant renews his trial contention that his digital penetration of ND's anus was "consensual and for which [the a]ppellant had a mistaken belief" that she consented.[20]

The parties agreed that ND did not consent to any anal penetration at the beginning of their relationship. However, at some point, ND did consent twice to anal sex with the appellant and also tried "anal training" with sex implements. ND was inconsistent in her pretrial and trial testimony regarding if she had consented to anal penetration—by object or by the appellant's person—prior to the forced digital penetration of her anus. In response to a member's question regarding the timing, ND responded, "The forceful anal penetration happened before any of my consensual anal penetrations with him."[21] However, in response to a cross-examination question later in the trial regarding whether any consensual anal intercourse

---

[19] Record at 1304; AE CXXIV at 4; 10 U.S.C. § 920(b)(1)(B) (2012).

[20] Appellant's Brief of 28 Sep 2016 at 36.

[21] Record at 876.

could have occurred prior to non-consensual digital penetration, she replied, "I don't know, it could have, it might not have."[22] The appellant avers the charge is factually insufficient due primarily to this inconsistent testimony.

This inconsistency, however, is not fatal to the government's case. The crux is whether the appellant put his finger in ND's anus by causing bodily harm, on this particular occasion, and in this regard, there is sufficient evidence to uphold the conviction. ND testified at length that this episode was not part of a BDSM scene between the two paramours; rather it was part of a vengeful and forceful interrogation about her whereabouts and activities. She explained how he threw her on the bed, forcefully held her down with his body weight, and then digitally penetrated her anus repeatedly when her answers were not to his liking.

The appellant's strongest argument—that they had engaged in consensual anal penetration prior to the incident so she must have consented on this occasion—misses the point: prior anal penetration does not equate to consent on this particular occasion. We reject the appellant's mistake of fact as to consent defense.[23] Although there was some inconsistency in her testimony regarding exactly when she used her "safe word" to try to get the appellant to stop forcibly penetrating her, her use of the word "only further cemented the absence of mistake" by the appellant.[24] Admittedly, ND's testimony was not free from conflict. However, even where conflicts in the evidence exist, we may give ND's credibility greater weight on some topics than others. *United States v. Lepresti*, 52 M.J. 644, 648 (N-M. Ct. Crim. App. 1999). This incident was not part of a BDSM scene; it occurred because the appellant was angry at ND. We are convinced beyond a reasonable doubt that the appellant is guilty of sexually assaulting her.

### 2. Assault consummated by a battery on ND

To convict the appellant of assault consummated by a battery, the government had to prove beyond a reasonable doubt: (1) that the appellant did bodily harm to ND; (2) that he did so by unlawfully holding ND down and biting her leg with his mouth; and (3) that the bodily harm was done with unlawful force or violence.[25]

---

[22] *Id.* at 1185.

[23] Although not dispositive, it is instructive that the members returned a not guilty verdict on a charge of forcible vaginal penetration wherein the safe word was not used by ND, and for which the defense of mistake of fact as to consent was also at issue.

[24] Appellee's Brief of 25 Jan 2017 at 29.

[25] Record at 1308; AE CXXIV at 6; 10 U.S.C. § 928(a) (2012).

ND testified that she and the appellant got into an argument after he led her to believe scratches on his back were "from a partner that he had promised that he wasn't going to be seeing."[26] She got angry, and bit him on his shoulder blade. The appellant then grabbed her, forced her onto a bed, and bit her thigh hard enough to cause ND "excruciating pain" and a large lump and bruise visible in a photograph taken a week later.[27] ND testified that this bodily harm was not part of their BDSM lifestyle and was done without her consent.[28]

ND admitted, in response to a member's question, that the appellant bit her "immediately" after she bit him. The appellant now argues, for the first time on appeal, that his bite should be excused as a rational reaction of self-defense. We reject the notion that the appellant was acting in self-defense when he overpowered ND, took her to the bed, held her down, and bit her so hard—like a horse bite—that he left a large bruise on her thigh.[29] Biting was not permitted in their BDSM contract. Even assuming, *arguendo*, biting was part and parcel of their BDSM lifestyle, granting consent for physical harm on one occasion does not equate to granting consent on any other occasion. The appellant was not justified in using such extreme force. He was not acting in self-defense to protect himself from ND when he bit her with disproportionate force; he did so in retaliation and anger. The photographic evidence of the severity of the bite is powerful, as the large bruise was readily visible a week later.

We have carefully considered the defense's testimonial evidence that ND could be violent if she was agitated, and that the appellant was "typically fairly peaceful, quite reserved."[30] However, this type of testimony is of negligible value when evaluating consent in a relationship involving so much consensual violence. On the whole, we are convinced beyond a reasonable doubt of the appellant's guilt.

*3. Indecent visual recording of KW*

To convict the appellant of indecent visual recording, the government had to prove beyond a reasonable doubt: (1) that the appellant knowingly recorded the private area of KW; (2) that he did so without the consent of KW; (3) that under the circumstances at the time of the charged offense, KW

---

[26] Record at 1189.

[27] *Id.* at 773, 949-50, 955, 1190.

[28] *Id.* at 779. Choking was part of their BDSM lifestyle. *Id.* However, the appellant was acquitted of choking ND.

[29] *Id.* at 773.

[30] *Id.* at 906.

had a reasonable expectation of privacy; and (4) that the appellant's conduct was wrongful.[31]

KW agreed to have sex with the appellant at a motel. Without her knowledge, he mounted the camera underneath a television facing the bed and filmed KW entering the room, disrobing, and having sexual intercourse with him on the bed. He never sought or received KW's consent for the recording. When KW first noticed the camera, she panicked, grabbed it, saw it was still recording, and reviewed the recording to learn her actions for approximately the previous twenty minutes were captured on it—as well as a separate, short video clip of her in the parking lot. She also found screenshots on the camera that appeared to be sexual videos involving other women. KW was angry and demanded that the appellant delete the video of their sexual intercourse. KW then immediately left the motel.

In a series of text messages, the appellant later apologized to her:

I deleted it, I apologized, I didn't try to hide it, there are no others, I wasn't right. I was thinking stupidly. I AM sorry and not just saying it, I feel rotten, I wish I knew how to right this . . .

I thought you'd like it. Again, I would like to point out I didn't exactly hide it at all. I thought you'd find it a pleasant surprise to be able to see our sexy time from another point of view. It didn't occur to me you would be pissed. I understand now why, and I get the feeling you've had a bad experience in the past with stuff like this[.] But realistically, it was obvious I didn't have malicious intent. I explained it was a mistake and I'm sorry and I've said I'm sorry and I had no problem deleting the video in front of you. . . .[32]

The appellant also admitted to another friend—who testified at trial—that he had secretly filmed the sexual encounter with KW and that he knew it was wrong.

On appeal, the appellant renews his trial arguments that KW had a bad memory and a motive to lie because the appellant was not a faithful partner to her. We reject these arguments; they run counter to KW's testimony and the appellant's repeated admissions.

The appellant also claims that because KW never testified to seeing her "private area" depicted in the video, the guilty finding is factually

---

[31] *Id.* at 1298-99; AE CXXIV at 1; 10 U.S.C. § 920c(a) (2012).

[32] Prosecution Exhibit 4 at 2-6.

insufficient. KW testified that she entered the motel room, got naked, and had sex with the appellant on the bed. She further testified that she looked at the camera and saw the camera had been recording the entire time she had been in the room and was pointed right at where she had sex with the appellant. This is strong circumstantial evidence. A finding of guilty may be based on circumstantial evidence. R.C.M. 918(c); *United States v. Roberts*, 59 M.J. 323, 327 (C.A.A.F. 2004) ("It is well accepted that circumstantial evidence is sufficient to sustain a finding of guilt.") Accordingly, we may affirm the conviction without direct evidence of the video showing KW's private area.

"[A]fter weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses as did the trial court, this court is convinced of the appellant's guilt [of all three charges] beyond a reasonable doubt." *Rankin*, 63 M.J. at 557 (citations omitted).

## C. Self-defense and mistake of fact as to consent instructions

The appellant alleges two instructional errors by the military judge: (1) not instructing the members on self-defense for the assault consummated by a battery charge (AOE 6); and (2) instructing the members that mistake of fact as to consent was not available to the appellant unless he reasonably believed that at the time of the conduct at issue the victim consented (Supplemental AOE).[33]

### 1. The law

Whether members were properly instructed is a question of law we review *de novo*. *United States v. Payne*, 73 M.J. 19, 22 (C.A.A.F. 2014). A military judge's decision to give, or not give, an instruction is reviewed for an abuse of discretion. *United States v. Maxwell*, 45 M.J. 406, 424 (C.A.A.F. 1996). The abuse of discretion standard calls for more than a mere difference of opinion; the challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous. *United States v. White*, 69 M.J. 236, 239 (C.A.A.F 2010). "The military judge must bear the primary responsibility for assuring that the jury properly is instructed on the elements of the offenses raised by the evidence as well as potential defenses and other questions of law." *United States v. Ober*, 66 M.J. 393, 405 (C.A.A.F. 2008) (citations and internal quotation marks omitted). "Generally, a military judge has 'substantial discretionary power' to decide whether to issue a jury instruction. *United States v. Maynulet*, 68 M.J. 374, 376 (C.A.A.F. 2010) (citing *United States v. McDonald*, 57 M.J. 18, 20 (C.A.A.F. 2002)).

---

[33] The alleged second instructional error is raised pursuant to *Grostefon*, 12 M.J. at 431.

While the "military judge has wide discretion in choosing the instructions to give[, he still] has a duty to provide an accurate, complete, and intelligible statement of the law." *United States v. Behenna*, 71 M.J. 228, 232 (C.A.A.F. 2012) (citations omitted). Instructions should be "tailored to fit the circumstances of the case," R.C.M. 920(a), Discussion, and provide "lucid guideposts" to enable the court members to apply the law to the facts, *United States v. Buchana*, 41 C.M.R. 394, 396-97 (C.M.A. 1970) (citations omitted). *See also, United States v. Killion*, 75 M.J. 209, 213-14 (C.A.A.F. 2016) (a military judge's instructions must be sufficient to provide necessary guideposts for an informed deliberation on the guilt or innocence of the accused).

"A military judge must instruct members on any affirmative defense that is 'in issue.'" *United States v. Schumacher*, 70 M.J. 387, 389 (C.A.A.F. 2011) (citing R.C.M. 920(e)(3)). An affirmative defense is "'in issue' when 'some evidence, without regard to its source or credibility, has been admitted upon which members might rely if they chose.'" *Id.* (citing *United States v. Lewis*, 65 M.J. 85, 87 (C.A.A.F. 2007) (additional citations omitted). "We review the judge's decision to give or not give a specific instruction, as well as the substance of any instructions given, to determine if they sufficiently cover the issues in the case and focus on the facts presented by the evidence." *United States v. McDonald*, 57 M.J. 18, 20 (C.A.A.F. 2002) (citations and internal quotation marks omitted).

*2. Not instructing on self-defense for the biting*

Self-defense under R.C.M. 916(e)(3) is applicable when the appellant (1) apprehends, upon reasonable grounds, that bodily harm is about to be wrongfully inflicted on him; and (2) believes that the force he uses is necessary for protection against that bodily harm, provided the force used by the appellant is less than force reasonably likely to produce death or grievous bodily harm. "Self-defense is a defense of necessity." *United States v. Curtis*, 153 (C.A.A.F. 1996), *rev'd on other grounds on reconsideration*, 46 M.J. 129 (C.A.A.F. 1997) (per curiam). Thus, "[i]f an accused uses force in excess of that believed by him or her to be necessary for defense, he or she becomes the aggressor and is not entitled to this defense." *Id.* (citing *United States v. Reid*, 32 M.J. 146, 148 (C.M.A. 1991); *United States v. Richey*, 20 M.J. 251, 252 (C.M.A. 1985)).

As a preliminary matter, the trial defense counsel never asked for a self-defense instruction for the assault the appellant was found guilty of. Rather, they asked for the instruction with regard to a specification for which the appellant was acquitted. But waiver by the defense does not apply to required instructions such as affirmative defenses, *United States v. Stanley*, 71 M.J. 60, 63 (C.A.A.F. 2012), because the military judge has the *sua sponte* duty to

13

instruct members on any affirmative defense that is "in issue," *Schumacher*, 70 M.J. at 389. Therefore, we must determine if self-defense was in issue.

The defense theory at trial regarding the appellant biting ND was that the biting was part of consensual BDSM with either the appellant or someone else, not that the appellant acted in self-defense.[34] "Although the defense presentation at trial is not dispositive in determining what affirmative defenses have been reasonably raised by the evidence, we may take into account the absence of a [self-defense] approach from the defense case when considering [whether the evidence reasonably raised a special defense.]" *United States v. Hibbard*, 58 M.J. 71, 76 (C.A.A.F. 2003).

The self-defense instruction was not raised by the evidence because there was no evidence that the appellant reasonably thought that ND was about to inflict bodily harm upon him and that he reasonably believed biting her thigh was a necessary action to prevent that harm. The appellant argues, for the first time on appeal, that he was acting in self-defense because ND admitted that the appellant bit her *immediately* after she bit him. But ND clarified that after she bit him, the appellant's reaction was anger vice self-defense: "He spins around in the chair, grabs me, we go onto the bed and he bites my thigh."[35] Further, the appellant's reaction was not necessary for his protection; his violence "exceeded the limits of reasonable action permitted for protection against bodily injury." *See Reid*, 32 M.J. at 148.

"When instructional errors have constitutional implications, as instructions involving self-defense do, then the error is tested for prejudice under a 'harmless beyond a reasonable doubt' standard." *Behenna*, 71 M.J. at 234 (citation omitted). Assuming, *arguendo*, the military judge committed instructional error, we find the error harmless beyond a reasonable doubt. The absence of the self-defense instruction had no impact on the defense's theory of the case, or their presentation of the case—which was centered on consensual activities of the parties in their BDSM lifestyle. We are confident, beyond a reasonable doubt, that had the military judge given the self-defense instruction for the biting assault, the members would still have convicted the appellant.[36]

*3. Instruction on mistake of fact as to consent*

Prior to the members' deliberation, the military judge instructed them that the government had to prove beyond a reasonable doubt that the visual

---

[34] Record at 1290-91.

[35] *Id.* at 766.

[36] The members acquitted the appellant of two other assaults where no self-defense instruction was given.

recording and the sexual assault were done without KW and ND's consent. The military judge properly gave the mistake of fact as to consent instruction, which is applicable when:

> [T]he [appellant] held, as a result of ignorance or mistake, an incorrect belief that the other person engaging in the sexual conduct consented. The ignorance or mistake must have existed in the mind of the [appellant] and must have been reasonable under all the circumstances. To be reasonable the ignorance or mistake must have been based on information, or lack of it, which would indicate to a reasonable person that the other person consented. Additionally, the ignorance or mistake cannot be based on the negligent failure to discover the true facts.[37]

During deliberations, the members sent the military judge the following question: "Does the 'mistake of fact as to consent' include the reasonable expectation that consent would be granted after the fact or is it specific [sic] that consent exists prior to the act?"[38] The military judge invited input from both sides. Then, citing *United States v. Hughes*, 48 M.J. 214 (C.A.A.F. 1998), and *United States v. Robertson*, 33 C.M.R. 828 (A.F.B.R. 1963), he instructed the members, over defense objection:

> Consent to the conduct at issue, in this case, is relevant only if it exists in the mind of the individual at the time of the conduct. The defense of mistake of fact as to consent is not available to the accused, if he did not reasonably believe that at the time of the conduct at issue the alleged victim was consenting to the conduct at issue. All of the surrounding circumstances are to be considered in determining whether a person gave consent or whether an accused's mistake of fact as to consent was reasonable.[39]

The members affirmed that this explanation answered their question and that they needed no further clarification.

"Court members are presumed to follow the military judge's instructions." *United States v. Jenkins*, 54 M.J. 12, 20 (C.A.A.F. 2000) (citing *United States v. Garrett*, 24 M.J. 413, 418 (C.M.A. 1987); *United States v. Ricketts*, 1 M.J.

---

[37] R.C.M. 916(j)(3), MCM (2012 ed.). *See United States v. Paige*, 67 M.J. 442, 455 (C.A.A.F. 2009) ("[T]he mistake of fact defense requires a subjective, as well as objective, belief that [the victim] consented . . . .").

[38] AE CXXVI.

[39] Record at 1345.

78, 82 (C.M.A. 1975)). The appellant fails to identify any error in the military judge's clarifying instruction to the members. Therefore, we reject it.

In sum, the military judge did not abuse his discretion in failing to give the self-defense instruction or instructing the members that a mistake of fact as to consent defense does not entail potential retroactive consent. His instructional decisions were not arbitrary, fanciful, clearly unreasonable, or clearly erroneous. *White*, 69 M.J. at 239. They provided an "accurate, complete, and intelligible statement of the law," *Behenna*, 71 M.J. at 232, were "tailored to fit the circumstances of the case," R.C.M. 920(a), Discussion, and provided "lucid guideposts" to enable the court members to apply the law to the facts, *Buchana*, 41 C.M.R. at 396-97.

## D. MIL. R. EVID. 412 ruling

The appellant argues the military judge abused his discretion by refusing to admit MIL. R. EVID. 412 evidence to impeach ND.[40] Specifically, the defense attempted to admit a photograph and video recordings of ND's consensual anal activities with the appellant to impeach her testimony regarding the sexual assault, and to show that the appellant had a reasonable mistake of fact as to consent defense.

The military judge ruled that a photo of a sex toy protruding from ND was inadmissible, but that the defense could ask ND if she permitted the appellant to place objects in her anus during their consensual sexual relationship:

> [T]he defense produced a still photograph of a nude woman, apparently ND, with what appears to be a sex toy protruding from her body. The photo, in context, appears to be taken from ND's personal profile on the social website FetLife.com. The toy appears to be inserted either in her vagina or her anus. The defense asserts that introduction of this photo is necessary to show that the accused and ND engaged in sexual practices that involved ND's anus. The defense did not produce, however, any evidence that the depicted conduct involved the accused, and therefore failed to show that this evidence is admissible under [MIL. R. EVID.] 412(b)(1)(B). Additionally, the photographic evidence does not leave the viewer certain that an object has actually been inserted into ND's anus. It seems as possible that the object is inserted into ND's vagina. Although the Court recognizes that this is a matter that would be left for the trier of fact, the ambiguity further reduces the probative value of this evidence. The evidence is excluded. The Court permits the

---

[40] Raised pursuant to *Grostefon*, 12 M.J. at 431.

> defense to ask if ND permitted the accused to place any objects in her anus during their consensual sexual relationship. The Court finds that this evidence is relevant to the issue of whether the accused might have believed he had permission to engage in sexual acts involving ND's anus.[41]

Prior to trial, the military judge excluded evidence of anal intercourse between ND and the appellant. But ultimately, at trial, this evidence was permitted because the "defense was able to show that ND's testimony allowed for the possibility that the attempt at anal intercourse occurred before the accused sexually assaulted her by putting his finger in her anus."[42] However, the military judge still did not allow the defense to present videos of consensual anal activity between the appellant and ND.

"We review a military judge's decision to admit or exclude evidence [under MIL. R. EVID. 412] for an abuse of discretion." *United States v. Erikson*, 76 M.J. 231, 234 (C.A.A.F. 2017) (citation omitted). "A military judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect." *Id.* (quoting *United States v. Olson*, 74 M.J. 132, 134 (C.A.A.F. 2015)) (additional citation omitted). MIL. R. EVID. 412(b)(1)(B) allows admissibility of "evidence of specific instances of sexual behavior by the alleged victim with respect to the person accused of the sexual misconduct offered by the accused to prove consent . . . ."

The military judge properly allowed cross-examination into all of the consensual anal sexual activity between the appellant and ND but did not admit the photograph and videos depicting such. The preclusion of this evidence had no possible impact on the trial because ND testified to engaging in that behavior. In other words, there is no reasonable possibility that had the photographs or videos been admitted the appellant would have been acquitted. They were cumulative with ND's testimony that she had engaged in anal sex activity with the appellant and also engaged in "anal training."[43] The appellant's argument is really one of dissatisfaction that he could not cross-examine ND on salacious photographs and videos, and then present them to the members.

"[A]n accused is not simply allowed cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. Indeed, trial judges retain wide latitude to limit reasonably a criminal defendant's right to cross-examine a witness based on concerns about, among other things,

---

[41] AE CXXXVI at 6-7.

[42] *Id.* at 7.

[43] Record at 810.

harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *United States v. Ellerbrock*, 70 M.J. 314, 318 (C.A.A.F. 2011) (citations and internal quotation marks omitted). Here, the military judge properly limited the cross-examination to the facts at issue—what kind of consensual anal activity had occurred between ND and the appellant—without permitting the defense to use sensational videos and pictures that were not necessary to achieve their point.

It is axiomatic that MIL. R. EVID. 403 provides the military judge, as gatekeeper, the means to exclude relevant evidence:

> The military judge may exclude relevant evidence if its probative value is substantially outweighed by a danger of one of more of the following: unfair prejudice, confusing the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence.

Where a military judge conducts a proper MIL. R. EVID. 403 balancing on the record, we will not overturn that ruling unless we find a clear abuse of discretion. *See United States v. Ashby*, 68 M.J. 108, 120 (C.A.A.F. 2009). The military judge did conduct such a balancing test in his written ruling,[44] and did not clearly abuse his discretion.

## E. Ineffective assistance of counsel

The appellant alleges he "did not receive effective assistance of counsel, due to an accumulation of errors, which prejudiced his right to a fair trial."[45] His claims are numerous but can be broken into two areas of concern: 1) the military judge was so frustrated with his civilian defense counsel that he did not get a fair trial; and 2) his counsel failed to investigate and prepare his case.

### 1. Military judge frustration

The appellant wrongly assumes the military judge was so frustrated with his counsel that he was denied a fundamentally fair trial. First he references several occasions during the trial—almost exclusively outside of the presence of the members—where he asserts the military judge was frustrated that the defense counsel would not obey the "one counsel rule" wherein only one counsel would handle making objections or arguing a certain issue. But this is normal practice in criminal trials when each side is represented by multiple counsel; there is nothing amiss with a military judge requiring that

---

[44] AE CXXXVI at 3-9.

[45] Appellant's Brief at 53. Raised pursuant to *Grostefon*, 12 M.J. at 431.

only one counsel from each side argue an issue or handle a witness so as to avoid confusion or repetition.

The appellant then cites to a pretrial motions hearing for evidence during which he claims the military judge was overly frustrated and biased against his civilian defense counsel. The government was about to call a witness who had refused to be interviewed by the defense, and the civilian defense counsel asked for a recess to interview him. The military judge denied the request, stating "That ship has sailed. We're going to put him on the stand."[46] Later, with the same witness, the civilian defense counsel wandered off the topic of the motion in his interrogation. The judge cautioned him that the purpose of the testimony was not to handle government discovery violations and that he "need[ed] to make this relevant pretty quickly."[47]

Finally, the appellant cites other examples of purported inappropriate frustration by the military judge during the trial when he made the following comments: "You need to make this relevant fast";[48] "My patience for that is gone";[49] and "I need you to know the thin ice that the defense is on. . . [w]ith respect to the [MIL. R. EVID.] 412."[50] The last two comments were made outside of the presence of the members and referenced the frustration the military judge was having with the defense's repeated noncompliance with giving MIL. R. EVID. 412 notice to the court and the government.

The appellant's defense attorneys did not raise any issues of concern with the military judge at trial regarding his purported behavior and never asked him to recuse himself. As there was no objection, this court reviews issues of a military judge's impartiality for plain error. "Plain error occurs when: (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice." *United States v. Martinez*, 70 M.J. 154, 157 (C.A.A.F. 2011) (citing *United States v. Maynard*, 66 M.J. 242, 244 (C.A.A.F. 2008)). A military judge should "disqualify himself . . . in any proceeding in which that military judge's impartiality might reasonably be questioned." R.C.M. 902(a).

Here, the military judge did not err in failing to *sua sponte* recuse himself because the military judge's behavior did not exceed that of any other trial judge tasked to ensure a fair, efficient trial. In fact, a careful read of the entire record illustrates the military judge was patient and professional with all counsel. He also instructed the members that they were not to blame

---

[46] Record at 40.

[47] *Id.* at 52.

[48] *Id.* at 674.

[49] *Id.* at 606.

[50] *Id.* at 608.

either side, but him, if they were frustrated with the many "start[s] and "stop[s]" during the trial necessitated by hearings outside of their presence, under Article 39, UCMJ.[51] Regardless, mere "remarks, comments, or rulings of a judge do not constitute bias or partiality, 'unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.'" *United States v. Quintanilla*, 56 M.J. 37, 44 (C.A.A.F. 2001) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). The military judge showed no deep-seated favoritism or antagonism toward either party.

Additionally:

> *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as . . . judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune. *Liteky*, 510 U.S. at 555-56 (emphasis in original).

The appellant asserts that "[t]he written word is bland," and that the military judge was too agitated during certain portions of the trial.[52] We have carefully reviewed the record, consisting of 1,434 pages of transcript. We find the military judge's demeanor and conduct were entirely within the norms expected of a military judge; he held both sides accountable, treated both sides fairly, and conducted a fundamentally fair trial.

### 2. Counsel failed to investigate and prepare for his case

The appellant provided several lists to his defense counsel, totaling around 33 people he determined were potential witnesses. He states that many were never called by his defense team, and that others were contacted merely weeks before his trial. He avers that "[m]any of these people were easy and willing to testify positively for me and negatively for my accusers."[53] Some of these witnesses did testify; the defense called seven witnesses during the trial, while the government called only five. We decline to second-guess the defense trial strategy as to why additional witnesses were not called when the appellant's strongest assertion is that they would have liked him and not liked ND. His sweeping generalizations about potential witnesses do not establish how their particular testimony would have led to a different result in his trial.

---

[51] *Id.* at 880-81.

[52] Appellant's Declaration at 8.

[53] *Id.* at 12.

The appellant's claims that his defense team was unprepared run the gambit and are unpersuasive.[54] His strongest claim is that they were continually chided by the military judge for not giving proper MIL. R. EVID. 412 notice to the government and to the court. However, this shortfall, if not excusable, is understandable, given the voluminous physical and testimonial sexual evidence in this BDSM case and the frequency with which MIL. R. EVID. 412 issues were raised. The defense team filed two MIL. R. EVID. 412 notices with opposing counsel and the court, followed by a motion to litigate the issues.[55] The extensive notice and litigation of these matters encompassed 15 different areas in the military judge's 10-page written ruling.[56]

*3. The law*

In reviewing claims of ineffective assistance of counsel, we "look at the questions of deficient performance and prejudice *de novo*." *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) (citation and internal quotation marks omitted). The Sixth Amendment entitles criminal defendants to representation that does not fall "below an objective standard of reasonableness" in light of "prevailing professional norms." *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

We apply *Strickland*'s two-prong test to determine whether counsel rendered ineffective representation. To prevail on a claim of ineffective assistance of counsel, "an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687) (additional citation omitted). "The burden on each prong rests with the appellant challenging his counsel's performance." *United States v. Davis*, 60 M.J. 469, 473 (C.A.A.F. 2005). The first prong requires the appellant to show that counsel's performance fell below an objective standard of reasonableness, indicating that counsel was not functioning as counsel within the meaning of the Sixth Amendment. *United States v. Terlap*, 57 M.J. 344, 349 (C.A.A.F. 2002). Our review of counsel's performance is highly deferential and is buttressed by a strong presumption

---

[54] For example, one claim is that his defense counsel did not cross-examine KW regarding her statement that she did not have her glasses on prior to entry into the motel room. The appellant provides a screenshot of KW wearing glasses outside the motel that evening, thus contradicting her testimony. But the impeachment value of this evidence is extremely weak, and has nothing to do with KW seeing the video camera footage of the appellant's surreptitious filming of their sexual encounter.

[55] AEs XXIX, XXXI, and LXX.

[56] AE CXXXVI.

that counsel provided adequate representation. *United States v. Garcia*, 59 M.J. 447, 450 (C.A.A.F. 2004).

The appellant's trial defense team's conduct falls within the wide range of reasonable professional assistance. His counsel filed and litigated over a dozen motions, conducted vigorous cross-examination of the government's witnesses, and presented a viable defense case on the merits and at sentencing. His counsel procured acquittals on three charges and got two charges dismissed prior to the presentation of evidence. The appellant has not demonstrated that his counsel's performance was deficient to the point that they were not functioning as the counsel guaranteed by the Sixth Amendment. Furthermore, we find that the appellant has failed to establish any prejudice from his defense team's performance which would show "a reasonable probability that, but for counsel's error, there would have been a different result." *United States v. Quick*, 59 M.J. 383, 386-87 (C.A.A.F. 2004) (citing *Strickland*, 466 U.S. at 694). For the reasons set forth above, we conclude the appellant's claim that his defense team was ineffective is without merit.

## III. CONCLUSION

The findings and sentence as approved by the convening authority are affirmed.

Chief Judge GLASER-ALLEN and Senior Judge MARKS concur.

For the Court

R.H. TROIDL
Clerk of Court